IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DALE S. M.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

        Defendant.

Case No. 3:19-cv-00238-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Dale M. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits ("DIB"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

# BACKGROUND

In January 2016, plaintiff applied for Title II benefits alleging disability beginning March 2, 2015, due to an aortic artery aneurysm and chronic abdominal pain. Tr. 184-85, 201. In April 2016, plaintiff amended his application, alleging his disability began one day earlier, on March 1, 2015. Tr. 186-87. Born in January 1967, plaintiff was 48 years old as of the alleged onset date. Tr. 78, 91, 184, 186.

Plaintiff's application was denied initially and upon reconsideration. Tr. 105-09, 111-13. On January 24, 2018, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 30-76. On March 30, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 25. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-9.

# THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "aortic aneurysm, diverticulitis, hernia, and anxiety." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) except he can:

> never climb ladders, ropes, scaffolds, no limits on balancing, all other postural activities can be performed occasionally; occasional exposure to hazards such as

moving mechanical parts, unprotected heights, operating a motor vehicle; limited to jobs with a reasoning level of two or less, limited to performing simple and routine tasks, limited to simple work related decisions, occasional interaction with the public, coworkers, and supervisors.

Tr. 20.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 24. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy that plaintiff could perform despite his impairments, such as bench assembler, hand packager, and janitor. Tr. 24-25.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting his subjective symptom testimony; (2) rejecting the lay witness testimony of six close relatives; and (3) failing to properly weigh the opinion of treating mental health counselor Ruth DeLeon.[2] Pl.'s Opening Br. 8-33 (doc. 14).

**I.     Plaintiff's Testimony**

Plaintiff argues the ALJ erred by discrediting his subjective symptom testimony concerning the disabling effect of his chronic abdominal pain. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject

---

[2] Plaintiff additionally alleges error in regard to the state agency reviewing physicians' opinions, in that the ALJ afforded these opinions too much weight given that they were rendered towards the beginning of the adjudication period – i.e., in April 2016 and September 2016. Pl.'s Opening Br. 34-35 (doc. 14). Although the state agency reviewing physicians did not have the entire breadth of medical evidence, as discussed in greater detail herein, their opinions are consistent with the totality of the record. Indeed, the ALJ considered and weighed the evidence that plaintiff cites post-dating the state agency reviewing physicians' opinions, with the ALJ explicitly rejecting the only inconsistent physical opinion evidence from primary care physician Eric Murray, M.D. Tr. 20-24. Significantly, plaintiff does not challenge the ALJ's treatment of Dr. Murray's opinion on appeal. See generally Pl.'s Opening Br. (doc. 14). Plaintiff has not cited to, and the Court is not aware of, any precedent granting remand under analogous circumstances. Accordingly, the ALJ did not err in this regard and no further discussion of this issue is warranted.

the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that he stopped working at his last position after he went to the emergency room. Tr. 40. The company "automatically dropped" him because he was "unable to return to work." Id. During the hearing, plaintiff's alarm alerted him to take medication. Tr. 42. Plaintiff testified that he was taking "[t]wo Tylenol, muscle relaxer, a Buproprion, Gabapentin and a morphine." Id. He further testified that he took this medication around the clock, every day. Id. Plaintiff then explained that he was unable to work because the pain that he was feeling – an internal ripping sensation – was "way more than what [he] ever want[s] to experience again." Tr. 45-46, 62-63. He testified that the only way to ease his pain was to lie down, propped against a

lounge pillow. Tr. 46. Despite laying in this position, he still "constantly" wakes up throughout the night. Tr. 63.

As for daily activities, plaintiff testified that he drove "periodically," used a cane "every day," fed his cats, took care of his son while his wife was at work, folded towels, read, watched movies, shopped using a scooter, and napped for six out of eight hours in a typical day. Tr. 38, 48, 50-51, 53, 56-57, 64.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 20. Specifically, the ALJ found that plaintiff's daily activities and the lack of corroborating medical evidence undermined his subjective symptom statements. Tr. 21-22.

Notably, the ALJ found that plaintiff's "activities of daily living are less limited than would be expected given his allegations of disabling symptoms and limitations." Tr. 22. Activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

Substantial evidence supports the ALJ's conclusion in the case at bar. For instance, the record reflects that plaintiff spent a considerable portion of each day caring for his two children – i.e., feeding them, transporting them to and from school and appointments, and supervising them. See, e.g., Tr. 209-10. The record also reflects that plaintiff assisted with household chores such as laundry, vacuuming, washing the car, taking out the trash, washing dishes, making the bed, and preparing meals. Tr. 211. He regularly transported himself to the pharmacy for his medication and

shopped in stores for household items. Id. In addition, plaintiff told his care providers that he was independent in his self-care and able to complete his activities of daily living, which included walking one-half mile, completing his home exercise program, putting up tarps in his garage, transporting himself to his appointments, and babysitting his then 5-year-old granddaughter. Tr. 275-77, 279, 1184, 1413, 1473. Further, plaintiff reported "[s]ome physical activity keeps the pain from getting worse." Tr. 1516. Therefore, while plaintiff proffers a more favorable interpretation of this evidence, the ALJ's interpretation must be upheld because it was reasonable. See Febach v. Colvin, 580 Fed.Appx. 530, 531 (9th Cir. 2014) (ALJ is not required to accept a claimant's attempt to characterize activities as consistent with disability where those activities "could also reasonably suggest" greater functional abilities) (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004)).

Moreover, the ALJ found that plaintiff's purported need for a cane was not consistent with the medical evidence. Tr. 21. The ALJ is correct; although there are treatment notes indicating plaintiff was observed using a cane at some appointments, the record is replete with medical evidence showing that plaintiff had a normal range of motion in all limbs and normal gait. Tr. 321-22, 328, 336, 371, 382, 384, 388, 391, 400, 404, 412, 415, 431, 447, 468, 475, 496, 1209, 1218, 1327. The fact that Dr. Murray opined in December 2015 that plaintiff may benefit from the use of a scooter, but did not qualify for one due to the lack of impairment in plaintiff's arms and legs, does not aid plaintiff. Tr. 308; see also Tr. 307 (hospital staff subsequently informing plaintiff that he did not have a qualifying impairment for a scooter). As the ALJ accurately noted, there is no

evidence in the record, beyond plaintiff's testimony, that his cane was prescribed by a medical professional.[3]

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements concerning the extent of his impairments. As such, this Court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's evaluation of plaintiff's testimony is affirmed.

**II.     Third-Party Testimony**

Plaintiff contends the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, to reject the statements of Barbara M. (his wife), Kayla M. (his daughter), and Renee T., Jack T., Kimberly M., and Terry M. (his in-laws). Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

Barbara M. wrote a letter in support of plaintiff's disability claim in January 2018. Tr. 267-69. She reported seeing plaintiff daily and described plaintiff as having been a hard worker in the past, often working overtime. Tr. 267. Barbara M. indicated that, after March 2, 2015, plaintiff's daily routine changed drastically. Id. She tried to go on walks with plaintiff that would last for about ten minutes. Id. She stated they would limit time away from the house "because of the comfortability" and described plaintiff's use of a "cane or electric scooter for shopping." Id.

---

[3] At the hearing, plaintiff testified that one of his surgeons prescribed the cane, but he was unable to recall the name of the surgeon or provide a specific timeframe of when the cane was prescribed beyond "2016, I think. The first surgery." Tr. 48-49.

Page 7 – OPINION AND ORDER

Also in January 2018, Kayla M., Renee T., Jack T., Kimberly M., and Terry M. wrote letters in support of plaintiff's disability claim. Tr. 270-74. These letters iterated sentiments substantially similar to Barbara M.'s letter.

The ALJ gave little weight to the third-party statements because they were inconsistent with the medical and other evidence, and not from an appropriate medical source. Tr. 24. Inconsistency with the record is a germane reason to discount third-party testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Lay witness testimony may also be disregarded on the same basis as the claimant's subjective reports. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

As addressed in section I, the ALJ identified inconsistencies in the record sufficient to reject plaintiff's subjective symptom testimony and these reasons are equally applicable to the lay testimony. Further, to the extent the third-party statements from plaintiff's family members contain medical opinions, the ALJ properly rejected that portion of their testimony because "medical diagnoses are beyond the competence of lay witnesses." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's decision is upheld as to the third-party statements.

### III.     Non-Acceptable Medical Opinion Evidence

Plaintiff asserts the ALJ erred by improperly translating Ms. DeLeon's opinion, which led to an incomplete RFC. At the time of the ALJ's decision, only "acceptable medical sources" could diagnose and establish that a medical impairment exists; evidence from "other sources" could nonetheless be used to determine the severity of an impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513. "Other sources" include, but are not limited to, therapists.

20 C.F.R. § 404.1513(d) (2016)[4]; SSR 06-03p, available at 2006 WL 2329939. To disregard the opinion of a non-acceptable medical source, the ALJ need only provide a reason that is germane to that witness. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010).

In July 2017, plaintiff first presented for mental health treatment at Columbia County Mental Health. Tr. 1343-46. During his intake assessment with Lisa Raney, Q.M.H.P., plaintiff reported "continual extreme pain in [his] abdomen" since March 2015. Tr. 1344. He "indicated that his chronic pain is the main issue" and he wanted to learn how to cope with his pain "on a different level." Tr. 1343-44. Ms. Raney concluded that a clear diagnosis was difficult "due to amount of painkiller prescribed meds he is taking" and noted plaintiff's pain may be "exacerbated by mental health issues and vice versa." Tr. 1345. She also indicated plaintiff's goal with counseling was "to have a good quality of life." Id.

Plaintiff then began counseling with Ms. DeLeon through Columbia County Mental Health, meeting with her almost monthly until November 2017. Tr. 1337-38, 1508-09. In other words, the only mental health treatment records before the Court are from the six counseling sessions plaintiff attended with Ms. Deleon during the latter half of 2017. Id. Although the record does not contain chart notes from plaintiff's appointments with Ms. DeLeon, on September 20, 2017, she completed an assessment update, noting that plaintiff was "experiencing success in living with chronic pain reporting that he can be happy and pained in the same moment." Tr. 1347-48. During the following appointment, on October 19, 2017, Ms. DeLeon again completed an assessment update reflecting that plaintiff was "making progress toward [his treatment] goal as evidenced by [his] ability to be in chronic pain and be in a happy mood." Tr. 1349-50.

---

[4] The Social Security Administration regulations have changed in regard to certain non-acceptable medical sources for claims filed on or after March 27, 2017. The new regulations do not apply to the instant case because plaintiff's claim was filed January 28, 2016. Tr. 184-85.

On January 3, 2018, Ms. DeLeon wrote a letter in support of plaintiff's disability claim and filled out a check-box form provided by plaintiff's attorney. Tr. 1504-09. In particular, Ms. DeLeon checked boxes indicating that plaintiff was "extreme[ly]" limited in his ability to "[c]oncentrate in order to complete the task," "[p]ersist in order to complete the task," and "[m]aintain pace in order to complete the task." Tr. 1506. The only narrative description accompanying this portion of her report simply stated "[n]ot at a sustainable pace." Id. This statement, when read in context with the remainder of Ms. DeLeon's assessment, suggests that the proffered extreme limitations stemmed from plaintiff's physical impairments rather than any organic mental disorder. See Tr. 1507 (Ms. DeLeon indicating that plaintiff's "chronic pain level directly correlates with his mood [and] ability to work"); see also Tr. 1506 (Ms. DeLeon denoting that plaintiff's ability to adjust to changes in his environment is limited by his reports of increased "symptoms of pain," which in turn cause "increase[d] mental distress").

The ALJ did not wholly reject Ms. DeLeon's assessment, affording it "[s]ome but less than great weight." Tr. 23. The ALJ accepted Ms. DeLeon's opinion that plaintiff had some mild and moderate limitations because they were "partially consistent with the weak objective evidence of claimant's mental functioning . . . and the claimant's activities of daily living." Id. However, the ALJ rejected Ms. DeLeon's opinion that plaintiff was extremely limited in concentration, persistence, and pace because it was: (1) inconsistent with plaintiff's conservative course of mental health treatment; (2) inconsistent with plaintiff's activities of daily living; and (3) not explained or supported by objective clinical findings. Id.

Here, the ALJ provided legally sufficient reasons to reject Ms. DeLeon's testimony. An ALJ need not accept lay testimony that is contravened by the medical or other evidence of record. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted). Likewise, an ALJ need not

accept a medical opinion, even from "a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Chaudry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (citation omitted).

Concerning the ALJ's first rationale, the ALJ is correct that there is a dearth of mental health medical evidence in the record. Prior to plaintiff initiating treatment with Ms. DeLeon in July 2017, the only evidence related to plaintiff's mental health occurred in January and April 2016, when plaintiff reported "trouble with his memory at times" and anxiety, respectively. Tr. 303, 1385-89; see also Tr. 84, 98 (state agency reviewing psychologists noting that there were "[n]o allegations of mental problems [as of September 2016], except for checking 'memory' and 'concentration' on the ADL form"). Dr. Murray began plaintiff on Wellbutrin, and, in January 2017, plaintiff requested an increase of his dose after noting some improvement with his anxiety. Tr. 1389. Further, to the extent treatment records exist from Columbia County Mental Health, they do not indicate that plaintiff struggled with concentration, persistence, or pace due to any mental impairment. Tr. 1337-38, 1343-46, 1508-09. In fact, Ms. DeLeon's assessment updates reflect that counseling was helping plaintiff cope with his chronic abdominal pain, which was his goal in seeking treatment. Id.

Regarding the ALJ's second rationale, plaintiff's daily activities implicate the mental ability to perform work consistent with the RFC. Notably, plaintiff drove regularly, cared for his children, shopped for essential household items, paid bills, counted change, handled a savings account, used a checkbook, and picked up his medication. Tr. 209, 211-12. He reported he did not need reminders to take care of personal needs and grooming, and could communicate with others through text messaging and social media, read, watch movies, and finish what he starts. Tr. 210-12.

As to the ALJ's third rationale, Ms. DeLeon's opinion is not explained nor does it reference any clinical findings, and there is no support for the purported extreme limitations in either the Columbia County Mental Health intake assessment or her two assessment updates. Rather, it appears as though the extreme limitations assessed by Ms. DeLeon stem from plaintiff's physical pain. However, this is outside of Ms. DeLeon's area of expertise.

Finally, contrary to plaintiff's assertion, the ALJ did not err in translating the moderate limitation in concentration, persistence, or pace assessed at steps two and three of the sequential evaluation process into the RFC used at steps four and five. As a preliminary matter, plaintiff focuses almost exclusively on the "simple and routine tasks" portion of the ALJ's RFC and therefore ignores the additional and significant non-exertional restrictions intended to account for plaintiff's mental limitations – i.e., jobs with a reasoning level of two or less, simple work related decisions, and occasional interaction with the public, coworkers, and supervisors. Pl.'s Opening Br. 26-29 (doc. 14).

Moreover, it is undisputed that Ms. DeLeon did not include any concrete functional restrictions in the narrative portion of her report and there is no other evidence suggestive of any mental limitations. See id. at 27-28 (plaintiff acknowledging that "here no medical expert opined" as to any work-related concrete functional mental limitations because the state agency reviewing psychologists "concluded that [he] has "mild" limitation in concentration, persistence or pace and [therefore] did not assess [a mental RFC]"). This is significant for two reasons.

First, "the term 'moderate' does not necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment." Cruise v. Astrue, 2012 WL 5037257, *8 (D. Or. Sept. 28), adopted by 2012 WL 4966462 (D. Or. Oct. 17, 2012) (citing Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007)); see also Purdy v. Berryhill, 2018 WL 452162, *12 (D. Hawaii Jan. 17, 2018)

Page 12 – OPINION AND ORDER

("[u]nder Ninth Circuit precedent, the ALJ is under no obligation to include in the RFC assessment any limitations she finds at Steps 2 and 3") (collecting cases). Specifically, the mild, moderate, marked, or extreme limitations, in the four broad functional categories – i.e., interacting with others, adapting or managing oneself, concentration, persistence, or pace, and understanding, remembering, or applying information – that are evaluated at steps two and three "are not an RFC assessment." SSR 96–8p, available at 1996 WL 374184; 20 C.F.R. § 404.1520a; see also Snider v. Berryhill, 2018 WL 344973, *4 (D. Or 2018) ("it is the narrative written by the psychiatrist or psychologist" and "not the broad terms, such as 'moderately limited,' in areas of functioning . . . that adjudicators are to use as the [basis of the] RFC") (citation and internal quotations omitted). As such, the fact that plaintiff has a moderate limitation in concentration, persistence, or pace does not, in and of itself, dictate the content of the ALJ's RFC.

Second, and relatedly, the adequacy of the ALJ's RFC turns on whether it is consistent with the medical evidence. Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008); see also Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (only limitations supported by substantial evidence must be incorporated into the RFC). Thus, plaintiff's reliance on Brink and Lubin is misplaced, as these cases do not stand for the proposition that the ALJ categorically commits error in translating a moderate impairment in concentration, persistence, or pace unless a "medical source opined that, despite this limitation, [the claimant] is able to sustain simple, routine tasks through an eight-hour workday." Pl.'s Opening Br. 27-28 (doc. 14).

Here, the ALJ rejected the mental health evidence that was adverse to plaintiff – i.e. the state agency reviewing psychologists, who endorsed no concrete work-related functional restrictions – as well as the portions of Ms. DeLeon's report that were inconsistent with her own treatment notes, and plaintiff's history of conservative treatment and daily activities. Tr. 84, 98.

As addressed above, the ALJ did not err in evaluating Ms. DeLeon's opinion; due to plaintiff's failure to either seek mental health treatment during the adjudication period outside of this brief six-month period, or report significant mental health symptoms, nothing else in the record suggests that mental restrictions beyond those listed in the RFC are warranted. Indeed, as discussed above, plaintiff did not initially allege disability due to any mental impairment and the medical record—including the evidence from Ms. DeLeon—overwhelmingly suggests that plaintiff's main barrier to employment is his chronic abdominal pain. For these reasons, the ALJ did not err in weighing the medical opinion evidence and, by extension, translating plaintiff's mental impairments into concrete functional limitations in the RFC. The ALJ's decision upheld in this regard.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 6th day of March, 2020.

                                      /s/ Jolie A. Russo
                                       Jolie A. Russo
                              United States Magistrate Judge